Mr. Justice James
concurring:
At the suggestion of my colleague, I add a word of concurrence.
One of the original building regulations, under which the building of the city was begun, provided that no house should be built on any of the avenues of less height than thirty-five feet. From this it appears that the power given to the President was construed broadly, and was understood to include more than the regulation of materials and methods of construction with reference to mere safety. The plain purpose of this particular provision was to secure a general effect, a city of agreeable appearance. It was conceived then that a building had relations quite beyond the separate interests of its owner and of concern to the whole community.
When a similar power was vested by Congress in the corporation of Washington, to be exercised under the approval and consent of the President, so as to conform to the condition of the original grant of these lands to the government commissioners, there was no intention, I think, to restrict its people to narrower limits. In the absence of any legislative interference in that direction, we have a right to suppose that it was intended that the power should still be construed broadly, and there is still better reason to understand that the powers given to the present government of the District are to be so construed. The act of 1878 provides that this District shall be a corporation as provided by the second section of what is commonly called the organic act, by which a governor and legislative assembly were provided, and that section gave to the corporation, then estab *405 lisbed, all municipal powers consistent with, the Constitution and laws of the United States. Provision was not made by the act of 1878, for the exercise of all these municipal powers by the new board of District Commissioners, but this broad grant to the corporation is to be kept in mind in construing such powers as to have been specifically given to the Commissioners. I conceive, for example, that when power to make building regulations was given to the Commissioners, coupled with a declaration that such regulations should have the force and effect of laws, it was intended that this power should be construed in connection with the grant of municipal powers in the act of 1878, and that it must have the extent which municipal power over such a subject may have, consistently with the Constitution and laws of the United States.
It may not be necessary to lay down that rule broadly in this, case but we are fully justified in giving a broad construction to tbe power granted as one of the municipal powers given to this corporation. When the power is so considered, it seems to me clearly competent in making building regulations, to provide that certain kinds of buildings, shall not be erected in certain neighborhoods, and to have reference, in making this discrimination, to the uses to which they must be put. If a regulation may have reference to the safety of neighbors it is just as competent to determine tbe question of neighborhood safety by the test of the use to which a building is to be necessarily applied as by thetest of material of which it is to be constructed. The Commissioners have a right to withhold a permit on the ground that a theater necessarily adds a new danger which is not to he thrust into a neighborhood without the consent of the neighbors just as they have a right to forbid the erection of wooden houses within certain limits. They have authority to provide that buildings wbicb must bring dangers shall not be erected at all unless certain conditions are satisfied.
It may he added that, by requiring the consent of the neighbors, tbe Commissioners have not turned over to those *406 persons the exercise of any poiuer in the premises. They have merely provided a means of ascertaining for themselves the propriety of allowing such a building to be erected in the proposed place.